The Sellmayer Packing Company v. Commissioner.
Sellmayer Packing Co. v. Commissioner
Docket No. 112419.
United States Tax Court
1943 Tax Ct. Memo LEXIS 42; 2 T.C.M. (CCH) 1026; T.C.M. (RIA) 43494; November 30, 1943
*42 R. S. Doyle, Esq., J. Gilmer Korner, Jr., Esq., and Stanley Worth, Esq., 404 Transportation Bldg., Washington, D.C., for the petitioner. Jane M. Pierce, Esq., Irene F. Scott, Esq., and William V. Crosswhite, Esq., for the respondent. OPPER
Memorandum Opinion OPPER, Judge: By this proceeding petitioner challenges respondent's determination of unjust enrichment tax deficiencies of $18,353.90 and $659.52 for the years 1935 and 1936, respectively. The primary question involved is whether petitioner has established that it had no net income from the sale of its products processed from hogs during the periods in question, within the meaning of section 501 of the Revenue Act of 1936. [The Facts] Petitioner is a Maryland corporation with its principal office and place of business in Baltimore, Maryland, where it engaged in the slaughtering business. It principally slaughtered cattle and hogs, although some sheep were also slaughtered. Petitioner sold the meat and processed products. Petitioner paid the tax on the processing of hogs for the months of February, 1934 to February, 1935, inclusive, in the net sum of $57,023.96 after allowing for credits of $4,022.20 by reason of sales *43 to certain state and charitable institutions. For the months of March to December, 1935, petitioner accrued but did not pay Federal processing tax in the amount of $22,942.37, and in the year 1936 it accrued but did not pay such tax in the amount of $824.40. On December 15, 1936, petitioner filed with the Baltimore office of the collector of internal revenue a Return of Tax on Unjust Enrichment for 1935. The return submitted no computations of the tax but stated: "It is impossible to make a complete return. This return is being filed under protest, without any liability being assumed for the payment of any taxes that may be claimed now or hereafter." A return of tax on unjust enrichment marked "Delinquent" for the period begun January 1, 1936, and ended January 6, 1936, was filed February 3, 1940. It contained no computations of unjust enrichment tax. Petitioner purchased its hogs in Chicago, St. Louis, and locally. It purchased hogs that were light in weight and of a low grade which occasioned losses in transit and condemnations in a higher amount than if better grade hogs had been purchased. Petitioner's trade was confined to the State of Maryland and its plant was not federally *44 inspected. Every load of hogs received by petitioner was subject to a cutting test in which six hogs selected as being representative were slaughtered and the weight of the carcass and cuts or parts determined in relation to the pre-slaughter weight. Price lists were issued about once a month for the use of petitioner's salesmen and employees. The prices were changed frequently though not necessarily in the same proportion for each item, the changes being shown in pencil. Petitioner tried to consider the processing tax as one element of cost. It also took into consideration the cost of the hogs, the state of the market at the time, and the effect of the weather. The business was highly competitive both as to the purchase of live stock and the sale of the finished products. Generally petitioner was unable to realize its price-list price and the amounts obtained by petitioner for the various cuts of pork had no constant relationship to the prices shown on the price lists for the same cuts. Petitioner sold for cash and credit, the sales usually being evidenced by sales invoices on which the products sold and the prices to be charged were itemized. The sales invoices were in duplicate, *45 one of which was given to the purchaser, and the other signed by the purchaser was retained by petitioner. The original records of petitioner's sales, which would have been the primary evidence thereof, were not produced nor adequately accounted for by petitioner. After the filing of petitioner's unjust enrichment tax return for 1935 respondent caused a field examination to be made in connection with the return and thereafter issued a preliminary letter, dated August 24, 1940, which was protested by petitioner. For the year 1935 petitioner's total sales of beef, pork, and miscellaneous items as shown by petitioner's books amounted to $472,148.17. Petitioner's opening inventory of all items as shown on its books was in the amount of $30,486.10 and its closing inventory of all items as shown on its books was $29,144.15. Its costs of live stock as shown on its books were as follows: Cattle
Hogs
and Sheep
Total
Purchase
price
$152,456.59
$183,411.41
Freight (in-
cluding feed
en route)
10,768.03
364.75
Total cost
$163,224.62
$183,776.16
$347,000.78
Petitioner's total expenses for the year 1935, as shown on its books, were as follows: Purchases, miscellaneous
$32,879.06
Salaries and wages
61,946.94
Power, heat and light
16,860.88
Boxes, cans, etc.
5,576.51
Depreciation
3,327.62
Advertising
521.00
Elec. and engine room repairs and
supplies
1,663.90
Plant repairs and supplies
1,375.84
Building repairs and supplies
3,875.21
Auto expense
7,550.96
Taxes
9,469.59
Insurance
5,065.40
Office expense
1,342.00
Miscellaneous expense
9,422.23
Wood, sawdust, etc.
823.16
Interest paid
1,762.78
Total
$163,463.08
*46 [Opinion] This is a companion case to Docket No. 431 P.T. It involves the imposition of the unjust enrichment tax levied by Title III, Revenue Act of 1936. The inability of petitioner to show that it bore the burden of the processing taxes involved stems from the same circumstances as existed in the processing tax case. For reasons there stated and which need not be here repeated, secondary evidence of the gross sales value of petitioner's product must be excluded, resulting in a complete failure of proof of this component of petitioner's case. A further contention is here advanced, however, arising from the language of section 501 (a) (1) which limits the unjust enrichment tax to 80 percent of "the net income from the sale of articles with respect to which a Federal excise tax was imposed." It is petitioner's position in this proceeding that there was no such net income and, therefore, no basis for the imposition of any tax. To arrive at the amount of net income the petitioner not unnaturally seeks to show its gross receipts from the portion of its business dealing with hogs, the commodity subject to processing tax, as a preliminary to deducting therefrom its expenses of *47 operation and the costs of the processed articles. It claims to be able to produce the figures establishing the gross income [1] from its sales of pork products by computations said to have been prepared by its accountant and submitted as an appendix to its brief. The difficulty with this effort on the part of petitioner is that in essence it is attempting to prove by secondary evidence, or possibly by a process of assumption and approximation that does not even reach the dignity of evidence, the fact which the excluded documents were designed and would have tended to establish. The gross sales income from petitioner's pork products is no more than a composite of all of petitioner's sales which in turn were a whole multitude of individual transactions between petitioner as seller and its customers. These transactions were evidenced by written instruments consisting of the sales *48 invoices which embodied the terms agreed upon between buyer and seller and were contemporaneously exchanged as part of the transaction itself. They are recognized by both parties as being the primary evidence of petitioner's sales. It follows that the best proof of the selling prices were the sales invoices, and that the production of these invoices would have obviated all of the difficulties of establishing that part of petitioner's case. For reasons already noted, however, secondary evidence of the contents of these invoices was not admitted and is considered to be inadmissible. But petitioner's present attempt is no more than to substitute a differently contrived sort of secondary evidence. It seeks to show gross pork sales either by applying a fixed percentage of total sales to pork, or by supplying the missing prices by a computation from the small proportion of invoices that were actually produced, a procedure obviously depending on the assumption that the missing invoices were similar in material details, particularly as to price, to those which were produced. But these are merely ingenious substitutes for the best evidence and are as inadmissible as any other effort to prove *49 indirectly the sales prices shown by the original invoices. "As tending to prove the content of a writing * * * no evidence other than the writing itself is admissible * * *." Restatement, Evidence Rule 602. To put it another way, any figure arrived at by the methods suggested by petitioner would be insupportable if it could be shown to be inconsistent with the invoices. Only the failure to produce the invoices deprives respondent of this safeguard, on the one hand, and necessitates the resort to approximation, on the other. Thus, petitioner's proffer contains the very essence of the objectionable features of secondary evidence. It follows that we are unable to determine the total receipts from the hog business and, consequently, it becomes unnecessary to consider whether under other circumstances such computations and assumptions as petitioner urges should be favorably regarded. The allocated costs of operation furnished by petitioner's own figures are insufficient, when added to the cost of the processed articles, to eliminate a profit from the hog portion of the business, assuming that total receipts from sales were all attributable to hog products. There being no way to conclude *50 that any smaller amount constituted the proceeds of petitioner's hog business, the result must be that petitioner has failed to establish its proposition that it had no net income from the portion of its business with respect to which the processing tax was imposed, and it again becomes unnecessary to determine whether on the record any allocation of costs could be made and, if so, whether that proposed by petitioner could otherwise have been supported. Decision will be entered for respondent. Footnotes
1. "(c) The net income from the sales specified in subsection (a)(1) shall be computed as follows: "(1) From the gross income from such sales there shall be deducted the allocable portion of the deductions from gross income for the taxable year which are allowable under the applicable Revenue Act; or"↩